

**FILED**

AUG 29 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

## NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | ) Case No. 10-64847-B-7 |
| Scott Rich, | ) DC No. UST-1 |
| Debtor. | ) |

## MEMORANDUM DECISION REGARDING U.S. TRUSTEE'S MOTION FOR REVIEW AND DISGORGEMENT OF ATTORNEY'S FEES, IMPOSITION OF MONETARY SANCTIONS, AND INJUNCTION AGAINST E-FILING

This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Robin Tubesing, Esq., appeared on behalf of the Acting United States Trustee, August B. Landis, Esq.

Christian D. Jinkerson, Esq., of Klein, DeNatale, Goldner, et al., appeared on behalf of the debtor, Scott Rich.

Joel D. Winter, Esq., appeared on behalf of himself.

Before the court is a motion by the United States Trustee ("UST") for (1) the review and disgorgement of fees paid to attorney Joel D. Winter Esq. ("Winter") pursuant to 11 U.S.C. § 329 and Federal Rule of Bankruptcy Procedure 2017,[1] (2) the

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, as enacted and promulgated *after* October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-8, 119 Stat. 23 (enacted Apr. 20, 2005). "Rule" or "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036. "L.B.R." or "Local Bankruptcy Rule" references are to the Local Rules of Practice for the United States Bankruptcy Court, Eastern District of California (effective Jan. 29, 2010). "L.D.R." or "Local District Rule"

1    imposition of monetary sanctions against Winter pursuant to Local Bankruptcy Rule

2    9004-1(c)(1), and (3) an injunction pursuant to § 105(a) to prevent Winter from

3    electronically filing any document in this District which requires the client's signature

4    without also filing a copy of the original version bearing the client's "wet signature."

5    The UST filed this motion after the debtor, Scott Rich ("Rich" or the "Debtor") alleged

6    that Winter had improperly handled his case with regard to the preparation, signing, and

7    filing of the petition, schedules, and other documents.

8         After the first hearing on the motion, the court ordered Winter to disgorge the

9    attorney's fees he received in connection with this case in the amount of $1,175[2] and

10   requested that the UST further investigate some of Winter's other cases for similar

11   misconduct before ruling on the sanction request.  The UST examined 25 additional

12   cases and submitted his findings to the court in a verified report.  The report found

13   widespread misconduct by Winter in each of the 25 cases, findings that Winter does not

14   dispute.

15        For the reasons set forth below and after careful consideration of the record, the

16   court will order the following: (1) Winter shall comply with the court's civil minute

17   order dated July 13, 2011, and disgorge to the Debtor the attorney's fees he received in

18   the amount of $1,175; (2) Winter shall pay a monetary sanction to the court in the

19   amount of $2,000 for violating the Bankruptcy Rules and the Local Bankruptcy Rules in

20   a significant number of his cases; (3) Winter shall reimburse the UST for his costs

21   attributable to filing the adversary complaint against Winter's client, bringing this

22   motion, and investigating Winter's other cases; and (4) Winter shall, for a period of one

23   year, not electronically file any document bearing the virtual signature of his client

24   _____

25   references are to the Local Rules of Practice for the United States District Court, Eastern District
     of California (effective Feb. 8, 2011).

26

27

28   [2]Winter has not filed anything to indicate that the fees were disgorged in compliance with
     the civil minute order dated July 13, 2011.

1  without also filing a copy of the originally "wet signed" document.

2      This memorandum decision contains the court's findings of fact and conclusions

3  of law required by Federal Rule of Civil Procedure 52(a), made applicable to this

4  contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c).  The court

5  has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 105, and

6  General Order Nos. 182 and 330 of the U.S. District Court for the Eastern District of

7  California.  This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

8  **Background and Findings of Fact.**

9      On December 27, 2010, a voluntary chapter 7 petition was filed for Rich by his

10  attorney Winter using the court's electronic case filing ("ECF") system.  Winter received

11  a fee in the amount of $1,175 from Rich.  Along with the petition, Rich's Schedules A

12  through J, Statement of Financial Affairs, Statement of Intention, and Official Form 22A

13  were also filed electronically.  On the last pages of these documents, where a debtor must

14  verify under penalty of perjury that the information provided in the documents is true and

15  correct, Rich's electronic "virtual" signature appears on the signature line as "/s/ Scott

16  Rich."  Winter filed these documents using his registered ECF user account.

17      On April 5, 2011, the UST initiated an adversary proceeding against Rich, seeking

18  to deny his discharge under § 727(a)(4)(A) and (a)(2)(A).  The UST's complaint was

19  based on the fact that Rich's schedules did not disclose various pre-petition transfers of

20  real property and personal property.  After obtaining new counsel in both the main

21  bankruptcy and adversary proceeding, Rich answered the complaint.  Rich denied the

22  allegations that he had reviewed, approved, and signed the petition, schedules, and

23  statements before Winter filed them.  At the initial status conference, the court issued an

24  order directing Winter to produce his file with the originally signed documents at issue.

25  He was unable to do so and acknowledged that they had been filed without having been

26  reviewed and signed by Rich.  Subsequently, Rich filed amended schedules and

27  statements and turned over enough funds to the chapter 7 trustee to pay all of his claims

28  in full.  As a result of Rich's defense and subsequent actions, the UST withdrew his

1    complaint, and Rich received his discharge.

2        Due to the facts brought to light in Rich's defense of the adversary proceeding,

3    the UST filed a motion requesting the court to review Winter's conduct and order

4    disgorgement of the attorney's fees Rich had paid to Winter.  The UST also requested

5    monetary sanctions of not less than $1,000 for Winter's failure to produce the original

6    documents personally signed by Rich, and to bar Winter from filing any petition or

7    document without also filing the signed original version (the "Motion").  The Motion

8    was supported by Rich's declaration, where he waived his right to the attorney-client

9    privilege for any communications made between himself and Winter.

10       Winter filed an unsigned response to the Motion.  In his response, Winter

11   admitted to no longer being in possession of Rich's original petition, schedules, and

12   statements, thereby leaving open the factual issue of whether Rich had actually signed

13   the documents prior to their filing.  However, Winter did admit that he failed to have

14   Rich verify the filed documents.  He believed this inaction to be ultimately

15   inconsequential, stating that Rich's verification "only matters if the omissions or errors

16   [in the schedules and statements] would have been identified by [Rich] and corrected."

17   Nevertheless, Winter felt his conduct "was in compliance with the spirit of the law."

18       At the hearing, after addressing Winter's action and their significance, the court

19   ordered that Winter disgorge the fees he had received from Rich in the amount of $1,175

20   and to file a proof of disgorgement.  The record does not show that Winter ever complied

21   with the court's order so the court must infer, for purposes of this ruling, that the fees

22   have not yet been disgorged.

23       The court further requested that the UST investigate a sample of 25 other cases

24   filed by Winter in 2010 and 2011,[3] in order to determine whether the document

25

26

27
        _____
        [3] According to the court's records, Winter had filed, on behalf of his clients, 86 petitions
28   in 2010 and 55 petitions in 2011.

4

verification problem revealed in Rich's case represented an isolated incident or whether it was part of a recurring pattern of conduct by Winter that justified harsher sanctions.

Following the court's request, the UST sent a letter to Winter, which instructed him to deliver to the UST the signed original Petition, Schedules A through J, Statement of Financial Affairs (the "SOFA"), Statement of Intention (the "SOI"), and Official Form 22 (the "Means Test Forms") in 25 randomly selected cases.[4]  Winter was also instructed to submit a signed statement under penalty of perjury indicating whether he had obtained the debtors' signatures on the original documents in those cases prior to filing the electronic versions with the debtors' "/s/" signatures.

He partially complied with the UST's request, delivering documents in 17 of the 25 cases along with a statement signed under penalty of perjury.  In his response, Winter stated that, to the best of his knowledge, the documents produced to the UST were signed prior to their filing, but in one case, Winter had only required the debtor to verify (and sign) the signature pages, rather than having him verify the entirety of the documents.[5]  He also admitted that there were some cases not within the 25-case sample where he had filed petitions on an expedited basis without first obtaining his client's signatures on the petitions.  In those cases, he stated that signatures were obtained shortly thereafter.  Winter, however, did not identify the cases where this had occurred.

For the remaining eight cases, Winter was unable to produce the signed original documents to the UST because his office had not retained those documents.[6]  Winter originally stated that the requirement of having to retain such documents was an "almost laughable" task.  He also admitted that in one of those eight cases he had failed to obtain

---

[4] Of the 25 cases, 24 were chapter 7 cases and one was a chapter 13 case.

[5] See *In re Sharits* (10-14364-A-7) in Appendix B3.

[6] See *In re Moore* (10-64848-B-7), *In re Oldham* (10-64846-B-7), *In re Phelan* (10-63872-B-7), *In re Reed* (10-61847-A-7), *In re Olvera* (10-19813-B-7), *In re Lopez* (10-15667-B-7), *In re S. Parker* (10-13482-B-7), and *In re Tyler* (10-13011-B-7) in Appendix B1.

signatures from a debtor prior to filing her petition and other documents, even though the filed documents bore the debtor's virtual signature.[7]  In another case, Winter could not recall whether he had obtained the debtor's signatures before or after e-filing.  Because the original documents in these eight cases were not retained or produced by Winter, there was no way of confirming whether Winter obtained the debtors' signatures prior to filing their documents.

With documents that Winter provided, the UST conducted his audit, examining whether there were any issues with the preparation, signing, and filing of those documents (the "Audit").  The Audit revealed a variety of issues in 16 of the 17 cases.[8]  In two cases, the debtors did not actually sign particular documents even though the filed version included their virtual signatures, and in one of these two cases, the debtor signed a document after the electronic version was filed, which showed an earlier signature date.[9]  In three cases, handwritten changes were made to the signed original documents, but those handwritten changes were not authenticated with the debtors' signature or initials.[10]

Based on the files produced by Winter, it appeared to be common practice for Winter's clients to sign documents where the date next to the signature line had already been generated by the software, rather than being handwritten by the clients themselves. In eight cases, the computer-generated signature dates did not match the dates stated on

---

[7] See *In re Olvera* (10-19813-B-7) in Appendix B2.

[8] Although the Audit did not uncover any issues with the 17th case, *In re Sharits* (10-14364-A-7), Winter admitted that he had allowed the debtor to only sign and verify the signature pages of the documents in that case.  Thus, issues existed in all of his audited cases.

[9] See *In re Beckman* (10-18340-A-7) and *In re Esparza* (10-12218-A-7) in Appendix B2.

[10] See *In re Alec* (11-15120-A-7), *In re Thao* (11-13837-A-7), and *In re Cane* (10-64850-B-7) in Appendix B3.

the filed versions.[11]  In two cases, the original documents did not include any signature

dates, while the filed versions did.[12]  In 12 cases, information in the signed original

Schedules, SOFAs, or Means Test Forms was inconsistent with the information provided

in the filed versions.[13]  And, in another case, handwritten changes made in the original

documents were not reflected in the filed versions.[14]

Finally, the Audit showed that, in six cases, the filed documents did not include

material information that had been disclosed to Winter on the clients' intake forms.[15]  In

one case, a debtor's payment of attorney's fees was not disclosed in the SOFA, contrary

to what Winter had stated in his Rule 2016(b) disclosure.[16]  In another case, a debtor's

SOFA failed to disclose the pre-petition transfer of a business even though the transfer

had been disclosed in the client's intake forms.[17]  And in another case, the Means Test

Form did not disclose income revealed on the filed Schedule I, which, if disclosed,

---

[11] See *In re Gentleman*, (11-13838-A-7), *In re Thao* (11-13837-A-7), *In re Glock* (10-63459-A-7), *In re Fritz* (10-61838-B-7), *In re Phonniseth* (10-19996-A-7), *In re Beckman* (10-18340-A-7), *In re Brown* (10-18338-B-7), and *In re D. Parker* (10-16911-A-7) in Appendix B4.

[12] See *In re Cane* (10-64850-B-7) and *In re Esparza* (10-12218-A-7) in Appendix B4.

[13] See *In re Tindall* (11-15155-B-13), *In re Delgado* (11-15123-A-7), *In re Alec* (11-15120-A-7), *In re Thao* (11-13837-A-7), *In re Preas* (11-10978-B-7), *In re Iskenderian* (10-63871-B-7), *In re Glock* (10-63459-A-7), *In re Fritz* (10-61848-B-7), *In re Brown* (10-18338-B-7), *In re D. Parker* (10-16911-A-7), *In re Martinez* (10-14365-B-7), and *In re Esparza* (10-12218) in Appendix B5.

[14] See *In re Beckman* (10-18340-A-7) in Appendix B5.

[15] See *In re Tindall* (11-15155-B-13), *In re Brown* (10-18338-B-7), *In re Martinez* (10-14365-B-7), *In re Cane* (10-64850-B-7), *In re Fritz* (10-61848-B-7), and *In re Glock* (10-63459-A-7) in Appendix B6.

[16] See *In re Tindall* (11-15155-B-13) in Appendix B6.

[17] See *In re Brown* (10-18338-B-7) in Appendix B6.

1    would have likely given rise to the presumption of abuse and supported a motion to

2    dismiss the case.[18]

3        The results of the Audit were summarized in a verified report compiled by the

4    UST and filed with the court (the "Verified Report").[19]  In response to the Verified

5    Report, Winter did not dispute the UST's findings and conceded that they were

6    "essentially correct."  In his defense, Winter stated that he was unable to produce

7    additional documents to address the issues in the Verified Report, but blamed the

8    problem on alleged "deficiencies" in his office's record-keeping system, rather than any

9    personal wrongdoing.

10       At a follow-up hearing where the parties had an opportunity to address the issues

11   raised in the Verified Report, the court expressed its initial intention to sanction Winter

12   up to $5,000 for violating the District's Local Bankruptcy Rules and Federal Rule of

13   Bankruptcy Procedure 9011, and to bar him from filing in this District any document

14   requiring the client's signature without also lodging a copy of the original showing that it

15   was actually signed by the client.  The court then continued the matter for a third hearing

16   to allow the parties, including Winter, to file supplementary responses to the Verified

17   Report.  Winter chose not to file any response.

18   **Discussion and Conclusions of Law.**

19       The problem that confronts the court here is twofold.  The first arises from the

20   fact that Winter, an officer of the court, has systematically engaged in a practice of filing

21   incomplete and inaccurate schedules and other documents with the court.  The second,

22   and most serious problem with regard to its affect on the court, and the entire bankruptcy

23   process, is the fact that the pleadings Winter did file with the court falsely and

24   fraudulently represented on their face that they had been reviewed by the clients and

25   verified as truthful under penalty of perjury.  Without truthful, accurate and complete

26

27       [18] See *In re Fritz* (10-61848-B-7) in Appendix B6.

28       [19] The findings of the Verified Report have been summarized in Appendix A.

1   documents, the bankruptcy system simply cannot function, as illustrated here by the fact

2   that the UST could not prosecute his adversary proceeding against Rich as a direct result

3   of Winter's conduct.  As the court in *Kavanagh v. Leija (In re Leija)*, 270 B.R. 497, 501

4   (Bankr. E.D. Cal. 2001) noted:

5      [T]he very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is
       to make certain that those who seek the shelter of the bankruptcy code do not play
6      fast and loose with their assets or with the reality of their affairs.  The statutes are
       designed to insure that complete, truthful, and reliable information is put forward
7      at the outset of the proceedings, so that decisions can be made by the parties in
       interest based on fact rather than fiction. . . . "[t]he successful functioning of the
8      bankruptcy act hinges both upon the bankrupt's veracity and his willingness to
       make a full disclosure."
9

10  Citing *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987).

11      Bankruptcy Rule 5005 provides that "[a] court may by local rule permit or require

12  documents to be filed, signed, or verified by electronic means."  FED. R. BANKR. P.

13  5005(a)(2).  Local Bankruptcy Rule 9004-1(c)(1)(C) & (D) (in effect at the

14  commencement of this case) allows the use of "e-signatures" in documents electronically

15  filed with the court's ECF system.  However, the same Rule specifically prohibits the

16  inappropriate use of electronic signatures on e-filed documents and imposes certain

17  restrictions and requirements on this privilege.  First, the Rule specifically provides that:

18      [t]he use of "/s/ Name" or a software-generated electronic signature on
       documents constitutes the registered user's representation that an originally
19     signed copy of the document exists and is in the registered user's
       possession at the time of filing.
20

21  L.B.R. 9004-1(c)(1)(c).

22  Immediately following, the next subparagraph then states,

23      When "/s/ Name" or a software-generated signature is used in an
       electronically filed document to indicate the required signature(s) of
24     persons other than that of the registered user, the registered user shall
       retain the originally signed document in paper form for no less than three
25     (3) years following the closing of the case. *On request of the Court, the
       registered user shall produce the originally signed document(s) for review.*
26

27  L.B.R. 9004(c)(1)(d) (emphasis added).

28      Local Bankruptcy Rule 9004-1(c) is clear as to what is required of attorneys: They

must possess a signed original document when they file the electronic version, and they must retain that original document for a number of years. Winter failed to do both in many of his cases, including this one. In addition, Winter violated California Rule of Professional Conduct 5-200 which provides, in pertinent part, that "[i]n presenting a matter to a tribunal, [an attorney] . . . [s]hall not seek to mislead the judge . . . by an artifice or false statement of fact or law." CAL. RULES OF PROF'L CONDUCT R. 5-200(B).

In one case, Winter affirmatively acknowledged that he failed to obtain wet signatures from a debtor prior to filing the debtor's documents even though those filed documents showed the debtor's "/s/" signature. He also admitted that this failure to obtain signatures occurred in other cases not within the 25-case sample. In two other cases where Winter did produce documents, he filed certain documents bearing the debtors' e-signatures without having actually obtained their wet signatures beforehand.

In nine cases, including Rich's, Winter violated the Local Bankruptcy Rule's second requirement, by being unable to produce signed original documents upon the UST's request. Winter's response (that the document verification and signature problem only mattered if the documents were inaccurate and that the document retention requirement was "almost laughable") illustrates clearly that Winter fails to grasp the significance of what happened here. When a debtor signs his petition, he is affirming that the information in the petition is true and correct and acknowledging that he consents to the filing, consent which only the debtor can give. *See In re Werk*, 296 B.R. 719, 726–27 (Bankr. E.D. Va. 2002). "Bankruptcy is a very personal action which should only be taken by the individual [debtor]," and not by his attorney. *Id.* at 726; *accord In re Raymond*, 12 B.R. 906, 907 (Bankr. E.D. Va. 1981) ("Bankruptcy is a personal exercise of a privilege and due to the seriousness of it, it may not be exercised by another . . . . We perceive bankruptcy to be a very personal matter which only the individual can voluntarily exercise."). Not only does an attorney's filing of an unsigned, unauthorized petition affect the debtor, but it also affects his creditors given that any filing of a voluntary petition creates the automatic stay. *See* § 362(a); *see also Wekell v.*

10

1   *United States*, 14 F.3d 32, 33 (9th Cir. 1994) (concluding that automatic stay is

2   applicable even though the petition was filed by a person without authority to do so).

3   When an attorney files an unsigned petition, the debtor receives the benefit of the

4   automatic stay to the detriment of his creditors, all without the debtor exercising that

5   privilege himself.  Such a practice by an attorney therefore constitutes a "flagrant abuse

6   of the bankruptcy process." *Werk*, 296 B.R. at 726.

7           Further, as the Local Bankruptcy Rule explicitly provides, by filing a document

8   purporting to have a debtor's signature, Winter is making a representation to the court

9   that an original document with the debtor's original signature exists at the time of filing.

10  L.B.R. 9004-1(c)(1)(c).  As one bankruptcy court has provided, "When [a] petition [is]

11  received, the court [is] presented with a document which stated on its face that [a] debtor

12  had signed it, under penalty of perjury, when it was not true.  This amounts to fraud."

13  *Werk*, 296 B.R. at 725.  Electronically filing a petition purporting to have the debtor's

14  signature is no different from "physically forging [the] debtor's signature and handling

15  the petition over the counter to the clerk." *Id.*  Thus, by filing "e-signed" documents that

16  the clients did not actually review and verify, Winter has perpetrated a fraud on the court.

17          **The Bankruptcy Court Has the Inherent Authority to Issue Sanctions to**

18  **Prevent Abuse.**  The bankruptcy court has both the express and inherent authority to

19  regulate and sanction attorneys who practice before it.  *See Peugeot v. U.S. Tr. (In re*

20  *Crayton)*, 192 B.R. 970, 975 (9th Cir. BAP 1996).  A bankruptcy court's express

21  sanctioning authority derives from the Code and the Rules.  *In re Nguyen*, 447 B.R. 269,

22  281 (9th Cir. BAP 2011) (en banc); *see also* L.B.R. 1001-1(g) ("Failure of counsel . . . to

23  comply with [the Local Bankruptcy Rules, the Federal Rules of Civil Procedure, and the

24  Federal Rules of Bankruptcy Procedure] . . . may be grounds for imposition of any and

25  all sanctions authorized by statute or [r]ule.").  But in the absence of an applicable statute

26  or rule authorizing sanctions, the bankruptcy court may rely on its inherent sanctioning

27  authority.  *In re DeVille*, 361 F.3d 539, 551 (9th Cir. 2004).

28  The Supreme Court has recognized that the federal district courts, through their status as

1    courts of justice, possess the inherent power to sanction. *See Chambers v. NASCO, Inc.*,

2    501 U.S. 32, 43–45 (1991) ("Courts of justice are universally acknowledged to be

3    vested, by their very creation, with power to impose silence, respect, and decorum, in

4    their presence, and submission to their lawful mandates." (citation omitted) (internal

5    quotation marks omitted)).  The Ninth Circuit subsequently held that bankruptcy courts

6    also possess the same inherent power. *Caldwell v. Unified Capital Corp. (In re Rainbow*

7    *Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir. 1996).  The bankruptcy court's inherent

8    authority derives from the very creation of the court and is evidenced by Congress's

9    grant of power to the bankruptcy court under § 105(a) to prevent any abuse of process.

10   *Id.* at 283–84 ("By providing that bankruptcy courts could issue orders necessary 'to

11   prevent an abuse of process,' Congress impliedly recognized that bankruptcy courts have

12   the inherent power to sanction that *Chambers* recognized exists within Article III

13   courts.").

14          The court's inherent authority allows it to sanction a "broad range" of improper

15   conduct.  *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1196 (9th Cir. 2003) (citing

16   *Fink v. Gomez*, 239 F.3d 989, 992–93 (9th Cir. 2001) (determining limitation of federal

17   district court's inherent sanctioning authority)).  This sanctioning authority even applies

18   when addressing misconduct outside of the courtroom. *See W. Sys., Inc. v. Ulloa*, 958

19   F.2d 864, 873 (9th Cir. 1992) (citing *Chambers*, 501 U.S. at 57).

20          The authority to sanction attorney misconduct arises not only from the court's

21   inherent powers to manage its cases and its courtroom, but also from the attorney's role

22   as an officer of the court. *In re Brooks-Hamilton*, 400 B.R. 238, 247 (9th Cir. BAP

23   2009) (citing *Chambers*, 501 U.S. at 43; *In re Snyder*, 472 U.S. 634, 643 (1985)).

24   "When an attorney appears before a federal court, he is acting as an officer of that court,

25   and it is that court which must judge his conduct." *Galam v. Carmen (In re Larry's*

26   *Apartment, LLC)*, 249 F.3d 832, 838 (9th Cir. 2001) (internal quotation marks omitted)

27   (citing *Cord v. Smith*, 338 F.2d 516, 524 (9th Cir. 1964)).

28          As the Ninth Circuit has noted, "With respect to the court's inherent power, . . . an

1   attorney admitted to a particular bar may be disciplined for conduct that violates that

2   bar's *local rules of professional conduct.*" *United States v. Wunsch*, 84 F.3d 1110, 1114

3   (9th Cir. 1996) (emphasis added) (citation omitted).  As an attorney admitted to practice

4   before the federal courts in the Eastern District of California, Winter was obligated to

5   comply with California's standards of professional conduct.  *See* E.D. CAL. R. 180(e)

6   (adopting the Rules of Professional Conduct of the State Bar of California, Rules 1-

7   100–5-320, and the State Bar Act, codified at California Business & Professions Code

8   §§ 6000–6238), *incorporated by* L.B.R. 1001-1©.

9        Here, the UST's Motion properly asserts that this court has the authority to order

10   the disgorgement of fees pursuant to § 329(b) and Rule 2017(a),[20] in addition to the

11   imposition of sanctions pursuant to L.B.R. 9004-1.  *See* L.B.R. 9004-1(c)(1)(d) ("The

12   failure to [produce signed original documents] may result in the imposition of

13   sanctions.").  Additionally, Winter's conduct is sanctionable under the authority of Rule

14   9011.  *See* FED. R. BANKR. P. 9011(c) ("If . . . the court determines that [Rule 9011(b)]

15   has been violated, the court may . . . impose an appropriate sanction upon the attorneys

16   . . . that have violated [Rule 9011(b)].").

17        **Disciplinary Process and Due Process.**  As the Ninth Circuit has observed, there

18   is "no uniform procedure for disciplinary proceedings in the federal system." *In re*

19   *Lehtinen*, 564 F.3d 1052, 1062 (9th Cir. 2009) (citation omitted) (internal quotation

20   marks omitted).  As a result, the "individual judicial districts are free to define the rules

21   to be followed and the grounds for punishment." *Id.* (citation omitted) (internal

22   quotation marks omitted).  In the Eastern District of California, the bankruptcy court is

23   empowered to supervise and discipline attorneys pursuant to L.B.R. 1001-1(c), which

24   specifically incorporates the District Court's L.D.R. 184.  Local District Rule 184(a),

25   titled "Discipline," provides, in pertinent part, the following:

26

27        [20] Since the court has already ordered Winter to disgorge his fees at the first hearing, the

28   court does not need to discuss that here.

1
2
3
4

> In the event any attorney subject to [the Local District Rules and Local Bankruptcy Rules] engages in conduct that may warrant discipline or other sanctions, any Judge . . . may, after reasonable notice and opportunity to show cause to the contrary, take any [ ] appropriate disciplinary action against the attorney. In addition to or in lieu of the foregoing, the Judge . . . may refer the matter to the disciplinary body of any Court before which the attorney has been admitted to practice.

5   E.D. CAL. R. 184(a), *incorporated by* L.B.R. 1001-1(c). This rule states that the court

6   "may refer" a matter involving attorney discipline to the appropriate disciplinary

7   authority. However, a plain reading of the rule shows that such referral is only

8   discretionary, and the bankruptcy court itself may hear the disciplinary matter. *See*

9   *Lehtinen*, 564 F.3d at 1062.

10         While the disciplinary procedures in this District appear flexible, what is required

11   before the court takes disciplinary action in any case is that the attorney subject to the

12   discipline be provided with procedural due process, including reasonable notice and an

13   opportunity to be heard. *Crayton*, 192 B.R. at 978 (citing *In re Ruffalo*, 390 U.S. 544,

14   550 (1968); *Rosenthal v. Justices of the Supreme Court of Cal.*, 910 F.2d 561, 564 (9th

15   Cir. 1990)); *see also* E.D. CAL. R. 184(a) (requiring "reasonable notice and opportunity

16   to show cause to the contrary" before taking disciplinary action).

17         Winter received adequate notice of his sanctionable conduct based on the UST's

18   Motion, his Verified Report, and the court's minute orders from the first and second

19   hearings. The Motion set forth Winter's misconduct in Rich's case and prayed for relief

20   pursuant to § 329, Bankruptcy Rule 2017, Local Bankruptcy Rule 9004-1(c)(1), and

21   § 105(a). At the First Hearing, the court also requested the UST to investigate Winter's

22   conduct in 25 other cases. Winter was provided notice of other sanctionable conduct in

23   these 25 cases when the UST filed his Verified Report. The Verified Report clearly laid

24   out each incident of misconduct in the audited cases. At the second hearing, the court

25   provided Winter with notice that his conduct in both Rich's case and the 25 other cases,

26   as specifically identified in the Verified Report, would be subject to the court's

27   sanctioning authority.

28

Winter was given numerous chances to dispute the misconduct identified by the UST and the sanctions proposed by the court. The court held three hearings where Winter was given an opportunity to appear and present arguments on his own behalf. Winter filed responses to the UST's original Motion and to the UST's Verified Report, both of which the court has considered. Winter challenged only the proposed sanctions, but conceded that the misconduct identified by the UST was, in fact, "essentially correct."

**Bankruptcy Rules 9011 and 1008.** In addition to the Local Bankruptcy Rules, the court may rely on the Federal Rules of Bankruptcy Procedure, which also address the signing and filing of documents with the court. Generally, documents filed with the court need not be verified.[21] *See* FED. R. BANKR. P. 9011(e). However, Rule 1008 requires that "[a]ll petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration." FED. R. BANKR. P. 1008. Except for the petition, only the debtor may sign these documents; the debtor's attorney is prohibited from signing them himself. *See* FED. R. BANKR. P. 9011(a). "When [the Bankruptcy Rules] require copies of a signed or verified paper, it shall suffice if the original is signed or verified and the copies are conformed to the original." FED. R. BANKR. P. 9011(f); *accord* FED. R. BANKR. P. 1008 advisory committee's note.

The failure to obtain a signature on or verification of a document or to conform a filed document to its original relates directly to the representations made by an attorney to the court when such a document is filed. Bankruptcy Rule 9011(b) provides the following:

> (b) Representations to the Court. By presenting to the court (whether by signing, *filing*, submitting, or later advocating) a *petition*, pleading, written motion, or *other paper*, an attorney . . . is certifying that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

---

[21] A "verification" means a "formal declaration made . . . under oath . . . whereby one swears to the truth of the statements in the document." BLACK'S LAW DICTIONARY 1698 (9th ed. 2009).

15

1              (1) it is not being presented for any improper purpose, such
2    as to harass or to cause unnecessary delay or needless increase in the cost
     of litigation;
3              (2) the claims, defenses, and other legal contentions therein
     are warranted by existing law or by a nonfrivolous argument for the
4    extension, modification, or reversal of existing law or the establishment of
     new law;
5              (3) the allegations and other factual contentions have
     evidentiary support or, if specifically so identified, are likely to have
6    evidentiary support after a reasonable opportunity for further investigation
     or discovery[.]

7    FED. R. BANKR. P. 9011(b) (emphasis added).

8           As provided above, Winter's failure to obtain wet signatures on the documents he

9    filed clearly constitutes a false representation to the court that the documents had been

10   verified and signed, thereby being a violation of Rule 9011(b). *See Werk*, 296 B.R. at

11   725–26; 9 COLLIER ON BANKRUPTCY ¶ 1008.02, at 1008-3 (9th ed. 2009) ("With the

12   advent of electronic filing of bankruptcy petitions, among the facts that the attorney is

13   certifying by electronically filing a petition that indicates the debtor has signed it is that

14   the debtor has, in fact, signed a paper copy of the petition.").

15          **Reasonableness of Sanctions.** Local Bankruptcy Rule 9004-1(c)(1)(d) provides

16   that an attorney's failure to produce signed original documents allows the court to

17   impose sanctions. In addition, Bankruptcy Rule 9011(c) provides that an attorney's

18   violation of Rule 9011(b) may result in the imposition of sanctions. Since the court has

19   found that Winter's various actions in all of his cases violated both L.B.R. 9004-1(c)(1)

20   and Bankruptcy Rule 9011(b), the court deems it appropriate to impose monetary

21   sanctions against him. First, Winter will be required to reimburse the UST for his costs

22   attributable to this matter, including preparation and filing the adversary complaint

23   against Rich, for bringing the Motion against Winter, and for performing his Audit of

24   Winter's cases and subsequently compiling his findings in the Verified Report. Second,

25   Winter will be required to pay the court $2,000 for repeatedly violating the Bankruptcy

26   Rules and Local Bankruptcy Rules as discussed above.

27          Given that various document-related issues arose in virtually every case of the 25-

28   case sample, it is also appropriate for the court to impose a limitation on Winter's e-

16

1  filing privileges.  For a period of one year beginning September 1, 2012, after

2  electronically filing any petition, schedule, statement, or other document requiring the

3  debtor's signature, Winter must also file a copy of the original version of the "wet

4  signed" document.  The e-filed version must conform to the "wet signed" copy.

5        Previously, the Bankruptcy Appellate Panel ("BAP") adopted the American Bar

6  Association Standards for Imposing Lawyer Sanctions ("ABA Standards"), using them

7  as the minimum standard in determining the reasonableness of sanctions.  *Crayton*, 192

8  B.R. at 980–81.  The ABA Standards "promote the thorough, rational consideration of

9  relevant factors, and help to achieve consistency when imposing attorney discipline."  *Id.*

10  at 980.  More recently, however, the BAP, sitting en banc, modified its holding in

11  *Crayton* that required the bankruptcy court to apply the ABA Standards.  *Nguyen*, 447

12  B.R. at 277–78.  The panel reasoned that

13       requiring a bankruptcy court to "slavishly intone" the ABA Standards makes little

     sense given that sanctions are within the sound discretion of the bankruptcy court,

14       and that deference should be given to bankruptcy courts' choice of sanction in

     that they have the inherent power to run the type of courtroom that they believe

15       best serves justice.

16  *Id.* at 277 (citation omitted) (internal quotation marks omitted).

17        The BAP therefore held that the bankruptcy courts "remain free to consult the

18  ABA Standards when formulating sanctions[, but] it is not reversible error if a

19  bankruptcy court does not do so."  *Id.* at 278.  Yet, not having to apply the ABA

20  Standards does not provide the bankruptcy court with unfettered discretion to impose any

21  sanctions it desires, however severe.  The court's sanctions must still be reasonable, and

22  "reasonableness continues to require that the sanction imposed be within the scope of the

23  bankruptcy court's authority and that the sanction be tailored to address the misconduct."

24  *Id.* at 280.

25        Here, a sanction of $2,000 is relatively mild in light of what happened in this case.

26  The reimbursement of costs incurred by the UST is reasonable and appropriate to

27  compensate the UST for the expense and effort he and his staff undertook to uncover and

28  clarify Winter's misconduct.  *See Lehtinen*, 564 F.3d at 1059 (stating that sanctions

under the inherent authority are appropriate when they are compensatory).  Winter fails

to appreciate that there can be absolutely no tolerance for what he did here.  It cannot be

smoothed over and approved after the fact.  The integrity of the bankruptcy court and the

bankruptcy system itself is jeopardized when practicing attorneys file false and

misleading documents with the court.  As an officer of the court, Winter had an absolute

duty to prevent that from happening.  Such conduct cannot be permitted under any

circumstances, even once, and it cannot be excused after the fact.

Although the language of L.B.R. 9004-1(c)(1)(d) does not contain any sort of

limitation on sanctions, Bankruptcy Rule 9011(c) does and thus provides the court with

some guidance on a limiting principle: "A sanction imposed for violation of this rule

shall be limited to what is sufficient to deter repetition of such conduct or comparable

conduct by others similarly situated." FED. R. BANKR. P. 9011(c)(2).  It is the court's

hope that a $2,000 sanction will sufficiently motivate Winter to run his office's

operations within the confines of the local and professional rules. *See Zambrano*, 885

F.2d at 1479 (allowing imposition of "relatively mild" fines under court's inherent

authority); *Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 733 (9th Cir.

1995) (stating that "[a]n appropriate award would be, at most, $5,000 payable to the

court" under court's inherent authority in that case).

With regard to the e-filing restriction, that too is an appropriate means to deter

Winter from allowing this problem to occur in the future. *Brooks-Hamilton*, 400 B.R. at

248.  Given the scope of Winter's conduct as revealed in the audited cases, the e-filing

restriction is reasonably tailored. *See DeVille*, 361 F.3d at 553 (noting that court's

discretion in imposing sanctions is "subject to the principle that the sanctions should not

be more severe than reasonably necessary to *deter repetition of the conduct* by the

offending person" (emphasis added) (citation omitted) (internal quotation marks

omitted)).  The e-filing restriction helps to prevent any further abuses of the bankruptcy

process.  While this sanction may be an inconvenience for Winter, this sanction will

18

ultimately benefit all of the other relevant parties, including Winter's clients, the UST, and the court itself, which greatly outweighs any hardship to Winter.

**Conclusion.**

Based on the foregoing, the UST's Motion will be granted. Within 10 days, Respondent Joel D. Winter, Esq., shall comply with this court's civil minute order dated July 13, 2011. He shall disgorge to the Debtor the attorney's fees paid in connection this case in the amount of $1,175 and/or file a proof of disgorgement. Within 30 days, Winter shall pay a monetary sanction to the court in the amount of $2,000 for numerous violations of the Bankruptcy Rules and the Local Bankruptcy Rules as discussed above.

In addition, Winter shall reimburse the UST for his costs attributable to this matter, including preparing and filing the adversary complaint against the Debtor, bringing this motion, investigating Winter's other cases, and preparing the Verified Report. Within 14 days, the UST shall file and serve on Winter a statement of the costs incurred in connection with these matters. Thereafter, Winter shall have 14 days to either pay the UST's bill of costs or file an opposition, stating specifically the basis for his opposition to each cost item, and set the matter for a noticed hearing.

Finally, Winter shall, for a period of one year beginning September 1, 2012, not electronically file in this District any document bearing the virtual signature of his client without also filing a copy of the originally "wet signed" document.

Dated: August ___*29*___, 2012

W. Richard Lee
United States Bankruptcy Judge

Scott Rich, Case No. 10-64847-B-7/DC No. UST-1


Scott Rich
35203 Rough Rider Way
Raymond, CA 93653

Bonnie J. Anderson, Esq.
Attorney at Law
1530 E. Shaw Ave., Suite 104
Fresno, CA 93710

Christian D. Jinkerson, Esq.
Attorney at Law
5260 N. Palm Ave., Ste. 201
Fresno, CA 93704

Joel D. Winter, Esq.
Attorney at Law
P.O. Box 2922
Clovis, CA 93613

Sheryl Ann Strain
Chapter 7 Trustee
575 E. Alluvial Ave., #101
Fresno, CA 93720

Robin Tubesing, Esq.
Attorney at Law
Office of the U.S. Trustee
United States Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721